**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARK H.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 20-cv-7726** |
| **v.** ) | |
| ) | **Magistrate Judge Jeffrey I. Cummings** |
| **KILOLO KIJAKAZI,[1]** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Mark H. ("Claimant") brings a motion for summary judgment to reverse the final

decision of the Commissioner of Social Security ("Commissioner") denying his claim for

Disability Insurance Benefits ("DIBs"). In a response to Claimant's motion for summary

judgment, the Commissioner seeks to uphold its decision to deny benefits. (Dckt. #17). The

parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28

U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g).

For the reasons that follow, Claimant's motion for summary judgment, (Dckt. #14), is denied.

**I.    BACKGROUND**

**A.    Procedural History**

On May 3, 2016, Claimant (then fifty-five years old) filed an application for DIBs,

alleging disability dating back to February 28, 2016, due primarily to seizure-like symptoms,

general anxiety disorder, attention-deficit/hyperactivity disorder ("ADHD"), and dyslexia.

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to Claimant only by his first name and the first initial of his last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

(Administrative Record ("R.") 197). Claimant's date last insured was December 31, 2021. (R. 16). His claim was denied initially and upon reconsideration. (R. 15). Claimant filed a timely request for a hearing, which was held on February 7, 2018, before Administrative Law Judge ("ALJ") Janice M. Bruning. (R. 35-68). On May 4, 2018, the ALJ issued a written decision denying Claimant's application for benefits. (R. 12-34). The Appeals Council denied review on February 2, 2019, and Claimant appealed to the U.S. District Court for the Northern District of Illinois. (R. 863-66). The Commissioner declined to defend the ALJ's decision and agreed to a voluntary remand, which the District Court ordered. (R. 867-71). The Appeals Council vacated the decision of the Commissioner and remanded the case to the original ALJ for further proceedings. (R. 872-76).

A second hearing was held before ALJ Bruning on August 18, 2020. (R. 801-29). The ALJ issued a second written decision on August 25, 2020, again denying Claimant's application for benefits. (R. 720-47). Claimant filed a complaint for administrative review in the District Court on December 24, 2020.

**B.     The Social Security Administration Standard to Recover Benefits**

To qualify for disability benefits, a claimant must demonstrate that he is disabled, meaning he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in

substantial gainful activity during the claimed period of disability.  20 C.F.R.

§404.1520(a)(4)(i).  At step two, the SSA determines whether the claimant has one or more

medically determinable physical or mental impairments.  20 C.F.R. §404.1521.  An impairment

"must result from anatomical, physiological, or psychological abnormalities that can be shown

by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  In other words, a

physical or mental impairment "must be established by objective medical evidence from an

acceptable medical source."  *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at

*2 (N.D.Ind. Oct. 22, 2019).  If a claimant establishes that he has one or more physical or mental

impairments, the SSA then determines whether the impairment(s) standing alone, or in

combination, are severe and meet the twelve-month durational requirement noted above.  20

C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at

step two to a list of impairments identified in the regulations ("the listings").  The specific

criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations.  20

C.F.R. Pt. 404, Subpt. P, App. 1.  If the claimant's impairments meet or "medically equal" a

listing, he is considered disabled and no further analysis is required.  If a listing is not met, the

analysis proceeds.  20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess the claimant's residual functional

capacity ("RFC"), meaning his exertional and non-exertional capacity to work despite the

limitations imposed by his impairments.  Then, at step four, the SSA determines whether the

claimant is able to engage in any of his past relevant work.  20 C.F.R. §404.1520(a)(4)(iv).  If the

claimant can do so, he is not disabled.  *Id.*  If he cannot undertake his past work, the SSA

proceeds to step five to determine whether a substantial number of jobs exist that the claimant

can perform given his RFC, age, education, and work experience.  If such jobs exist, the claimant is not disabled.  20 C.F.R. §404.1520(a)(4)(v).

### C.    The Evidence Presented to the ALJ

Claimant alleges disability due primarily to limitations stemming from seizure-like symptoms, general anxiety disorder, ADHD, and dyslexia.  He presented the following relevant evidence to the ALJ in support of his disability claim.

### 1.    Medical Records Related to Claimant's Physical Impairments

Claimant was hospitalized on March 24, 2015, after losing consciousness and collapsing in his home.  (R. 285).  He complained of confusion and nausea following the episode and was slow to respond to questions.  (R. 285, 288).  Although treating providers suspected a seizure disorder, CT scans, brain MRIs, and EEG findings were unremarkable.  (R. 300, 352).  Even so, providers noted that Claimant's post-event confusion made it more likely that Claimant had experienced a seizure.  They also commented that the combination of Wellbutrin and Concerta, which Claimant was prescribed in 2015, increased the risk of seizure, (R. 300, 452), and it was recommended that Claimant stop taking Concerta, (R. 418-19).  Claimant was diagnosed with hypoglycemia on May 7, 2015.  (R. 399).  He was advised to increase his hydration and eat small snacks every two to three hours.  (*Id.*).

Claimant was hospitalized again on November 19, 2015, after an episode of collapsing and "tonic jerking" at work.  (R. 343, 352).  It was unclear whether the incident was a seizure or a syncopal (a fainting spell) and treating providers noted that a prior seizure workup had been negative.  (R. 343).  Claimant's diagnosis was "fainting and dehydration."  (R. 373).  He collapsed again on March 11, 2016, and was again diagnosed with syncope, or "fainting."  (R. 370).  There are no other medical records of Claimant fainting in the Administrative Record.

## 2.    Records from Claimant's Mental Health Treaters

Claimant began treating with Theresa Wier, Psy.D., on February 28, 2016.  (R. 612).  She diagnosed dyslexia, generalized anxiety disorder, and depression.  (R. 429, 612).  Claimant's treating psychiatrist, Steve Kim, M.D., diagnosed him with depression, anxiety, and chronic aggravation on June 3, 2016.  (R. 421).  He noted that Claimant was anxious, depressed, irritable, and angry, but demonstrated cooperative behavior, congruent affect, linear thoughts, fair insight, normal orientation, and no impulse control impairment.  (*Id.*).

Dr. Wier completed a mental RFC assessment on Claimant's behalf on June 16, 2016.  Therein, she indicated that Claimant had no limitation in understanding or memory.  (R. 675).  She further found that Claimant was not significantly limited in his ability to carry out detailed instructions and had no limitation in his ability to carry out short and simple instructions.  (*Id.*).  According to Dr. Wier, Claimant was moderately limited in his ability to maintain attention and concentration for extended periods, but had no limitation in his ability to perform activities within a schedule, maintain regular attendance, be punctual, or complete a normal workday and workweek.  (*Id.*).  Claimant was markedly limited in his ability to interact appropriately with the general public, but had no limitation in his ability to maintain socially appropriate behavior.  (R. 676).  Finally, she found that Claimant was moderately limited in his ability to set realistic goals and make plans independently of others, but not limited in his ability to travel in unfamiliar places or use public transportation.  (*Id.*).  In several instances, Dr. Wier checked that a limitation was "not ratable on available evidence."  She recommended that Claimant "should be assessed by another mental health provider" regarding his capacity for understanding, memory, concentration, persistence, social interaction, and adaptation, because Dr. Wier could not perform such testing as his treating psychologist.  (R. 612).

One month later, on July 6, 2016, Dr. Wier completed a Psychiatric Report.  She noted Claimant's complaints of issues with memory, focus, and attention.  (R. 429).  She also indicated that Claimant had serious limitations in his ability to independently initiate, sustain, or complete tasks; understand, carry out, and remember instructions; and respond appropriately to supervision, coworkers, and customary work pressures.  (*Id.*).

Roughly six weeks later, on August 22, 2016, Dr. Kim completed a mental RFC assessment on Claimant's behalf.  He indicated that all of Claimant's functional abilities were at least moderately limited, with marked limitations in his ability to: understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to other without distraction, complete a normal workday/week without interruptions, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, get along with coworkers without distracting them, maintain socially appropriate behavior and basic hygiene, and respond appropriately to changes in the work setting.  (R. 619-21).  Dr. Kim left the narrative sections of the evaluation blank.  Dr. Kim completed an absence certificate on February 27, 2017, stating that Claimant was unable to work indefinitely due to depression and anxiety.  (R. 1021).

### 3.    Evidence from Examining Physicians

Claimant underwent a neuropsychological evaluation on December 29, 2016.  During the evaluation, which was completed by Erin K. Hill, Psy.D., Claimant described having anxiety, which caused stomach discomfort and diarrhea.  (R. 450).  Dr. Hill noted that Claimant was sad and mildly anxious and demonstrated some word retrieval difficulties.  (R. 452).  She observed that he "did not demonstrate a notable tremor," his thought content was appropriate, and his

thought process intact. (*Id.*). She administered various tests and found that Claimant had a full-scale IQ of seventy-seven, but low average verbal comprehension abilities and borderline impaired working memory and processing speed. (R. 453). Dr. Hill noted that Claimant had mildly impaired auditory attention span, and low average problem-solving and task-planning skills. (*Id.*). Claimant's immediate and delayed memory for words was in the average and high average range. (*Id.*). Claimant demonstrated weakness in attention, with stronger memory for repeated information. (R. 455). She diagnosed Claimant with ADHD, major depression, generalized anxiety disorder with panic attacks, and a suspected specific learning disorder. (*Id.*).

### 4. Evidence from State Agency Consultants

State agency psychological consultant Steven Fritz, Psy.D., reviewed Claimant's file on July 13, 2016. He found that Claimant had no limitation in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. (R. 73). Dr. Fritz found that Claimant had only one concentration and persistence limitation in that he was moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them. (R. 76). Claimant was also moderately limited in his ability to interact with the general public and his ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.*). Claimant did not have any limitation in understanding and memory or adaptation. (R. 75-76). Dr. Fritz concluded that Claimant had the capacity to "understand and remember instructions for multi-step tasks of a routine and repetitive type," that he "would do best in a socially undemanding and restricted setting that requires reduced interpersonal contact, away from the public," and that he "could relate acceptably with a supervisor and coworkers to the minimally necessary degree." (R. 76-77). State agency psychological consultant Gayle

Williamson, Psy.D., reviewed Claimant's file at the reconsideration level on October 10, 2016, and agreed with Dr. Fritz's findings. (R. 81, 87, 91-93).

State agency consultant Reynaldo Gotanco, M.D., reviewed Claimant's file on October 10, 2016. He found that Claimant could perform medium work except that he could only frequently balance and climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds. (R. 89-90). He added that Claimant should avoid concentrated exposure to hazards. (R. 90).

### 5.     Evidence from Claimant's Testimony

At the February 7, 2018, hearing, Claimant testified that he worked as a customer service representative for United Airlines for twenty-nine years. (R. 40-41). He stated that he has seizures up to four times a week, but has only fallen once. (R. 42, 43). He naps three times a day due to depression. (R. 42). Claimant testified that he has a dog that he feeds, lets in and out, and walks around the condo complex. (R. 45-46). He reported bilateral hand tremors that are more noticeable in his right hand and make it difficult to hold onto things. (R. 57).

Claimant had a second hearing on June 17, 2020, but the audio recording equipment malfunctioned, necessitating a third hearing on August 18, 2020. During these hearings, Claimant alleged that he passes out every other day and falls twice per day. (R. 806, 811, 899). He reported losing consciousness during these episodes. (R. 811). He reported that he feels weak and foggy after these episodes and needs to lie down for forty-five minutes. (R. 817). He stated that he naps twice a day for up to three hours. (R. 808, 818). He has hand tremors that prevent him from doing the dishes. (R. 808).

### D.     The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged

in substantial gainful activity since his alleged onset date of February 28, 2016.  (R. 725).  At

step two, the ALJ determined that Claimant suffered from the severe impairments of seizure

disorder, ADHD, anxiety, depression, and a specific learning disorder.  (R. 726).

At step three, the ALJ concluded that Claimant did not have an impairment or

combination of impairments that met or medically equaled one of the Commissioner's listed

impairments, including listing 11.02 (seizure disorders), 11.18 (traumatic brain injury), 12.02

(neurocognitive disorders), 12.04 (depressive disorder), 12.05 (intellectual disorder), 12.06

(anxiety and obsessive-compulsive disorder), 12.11 (neurodevelopmental disorders), or 12.15

(trauma- and stressor-related disorders).  (R. 727-31).  The ALJ found that Claimant's

impairments caused a moderate limitation in understanding, remembering, or applying

information; interacting with others; and concentrating, persisting, or maintaining pace; as well

as a mild limitation in managing himself.  (R. 728-29).  The ALJ also found that the evidence

failed to establish the presence of the "paragraph C" criteria.  (R. 729).

Before turning to step four, the ALJ determined that Claimant had the RFC to perform

medium work as defined in 20 CFR 404.1567(c) with the following limitations:

> [Claimant] could no more than frequently climb ramps or stairs, but could never
> climb ladders, ropes, or scaffolds.  He could no more than frequently balance, stoop,
> kneel, crouch, crawl, bend, or twist.  [Claimant] should avoid all exposure to work
> hazards, such as unprotected heights and dangerous moving machinery.  He could
> not operate motor vehicles for work purposes.  [Claimant] could understand,
> remember, carry out, and sustain no more than simple, routine tasks performing the
> same tasks day-in and out.  He could have no more than occasional contact with
> co-workers and supervisors, but he should have no contact with the public for work-
> related purposes.  He should not be required to engage in teamwork situations,
> meaning work with others to complete the same job tasks, but he could work
> independently.  He should not have any strict quotas, but [could] do work at a
> variable rate/pace where performance is measured by what is completed by the end
> of the workday.  [Claimant] should not perform work where a machine sets the pace
> of work.  Lastly, he should not be required to read for work purposes.

(R. 731). Based on these conclusions, the ALJ determined at step four that Claimant was not capable of performing his past relevant work as a baggage claim clerk. (R. 739). Even so, the ALJ concluded at step five that a sufficient number of jobs existed in the national economy that Claimant could perform given his RFC, age, education, including the representative positions of agricultural packer and sorter. (R. 740). As such, the ALJ found that Claimant was not disabled from February 28, 2016, through the date of the ALJ's decision. (R. 741).

## II.    STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant was disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## III. ANALYSIS

Claimant generally asserts that the Commissioner's decision must be reversed because the ALJ: (1) improperly discounted twelve of Claimant's impairments as non-severe; (2) failed to support her finding that Claimant's impairments did not meet or medically equal eight listings; and (3) failed to support her finding that a sufficient number of jobs exist that a person with Claimant's RFC can perform. The Court finds that these arguments are largely undeveloped and, accordingly, are waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ."). Despite this finding, the Court will address each of Claimant's arguments to the extent it is possible to do so based upon the parties' briefing.

### A. The ALJ's finding that only Claimant's seizure disorder, ADHD, anxiety, depression, and specific learning disorder constitute severe impairments was supported by substantial evidence.

As noted above, at step two of the analysis, the ALJ determines whether the claimant has any "severe impairments," i.e., impairments that "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). "An impairment is 'not severe' only if it is 'a slight abnormality' that has 'no more than a minimal effect on the ability to do basic work activities . . . .'" *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). Here, the ALJ found that Claimant's seizure disorder, ADHD, anxiety, depression, and specific learning

disorder constituted "severe" impairments. (R. 726). Although Claimant agrees with these findings, he maintains that the analysis was deficient because the ALJ "did not consider or improperly discounted" his "bilateral hand tremor, problems with falls, dizzy spells, fainting, headaches, foot pain, light and noise sensitivity, hypoglycemia, a digestive disorder, and histories of right-hand carpal tunnel syndrome, and eye, lower back, and right knee problems that required surgery." (Dckt. #15 at 8). Claimant's step two argument fails for three reasons.

First, several of the "impairments" that Claimant lists are merely symptoms or limitations stemming from other impairments. Problems with falls, dizzy spells, and fainting, for example, are symptoms of Claimant's seizure disorder, (R. 290, 296, 300, 352), which the ALJ found to be severe, (R. 726).[2] They also may stem from Claimant's hypoglycemia, which the ALJ found to be non-severe. (R. 727).

Second, Claimant's assertion that the ALJ "did not consider" his various deficiencies is wrong. The ALJ explicitly discussed these exact ailments – bilateral hand tremors, digestive disorder, headaches, foot pain, light and noise sensitivity, right hand carpal tunnel syndrome, and unspecified eye, lower back, and right knee problems – during her step two analysis. (R. 726). The ALJ found that Claimant's bilateral hand tremors were medically determinable but non-severe, as there was "no indication in the medical record that [they] imposed more than minimal work-related functional limitations for [twelve] or more months." (R. 726). As for the other impairments cited by Claimant, the ALJ found that they were not medically determinable

---

[2] Claimant argues that it "defies explanation that the ALJ would determine that [his] seizure disorder is a severe impairment but that his fainting episodes are not," (Dckt. #18 at 4), but he does not proffer any evidence distinguishing the two conditions and the Court's own review of the record suggests that they have routinely been discussed interchangeably. Claimant himself refers to his "episodes of seizures and/or fainting." (Dckt. #18 at 4). Furthermore, the fainting episodes are likely a symptom of either the seizure disorder or Claimant's hypoglycemia, both of which the ALJ addressed. Finally, as explained at the end of Section III(A), *infra*, any step-two error related to the limitation is harmless because the ALJ considered Claimant's allegations of fainting in the RFC.

because they had either not been diagnosed by an acceptable medical source or were not substantiated by the medical record. (*Id.*); *See* 20 C.F.R. §404.1508 (a "medically determinable" impairment is one that is established by "medical evidence consisting of signs, symptoms, and laboratory findings"). The ALJ also cited "normal" neurological and physical examination findings as evidence that even if these impairments were medically determinable, they did not interfere with Claimant's daily functioning. (*Id.*).

In his opening brief, Claimant does not acknowledge these findings, nor does he present any evidence refuting them. Accordingly, he fails to show that the ALJ erred at step two. *See Weaver v. Berryhill*, 746 Fed.Appx. 574, 579 (7th Cir. 2018) (claimant bears the burden of establishing the existence of his conditions, as well as "evidence that they support specific limitations affecting [his] capacity to work").

In his reply, Claimant attempts to supplement his argument by citing an evaluation documenting "moderate-significantly impaired fine motor dexterity in his right (dominant) hand and mild-moderately impaired fine motor dexterity in his left (non-dominant) hand." (R. 454). Claimant suggests that this note necessitates a finding that his hand tremors were severe. (Dckt. #18 at 2-3). Crucially, however, the neuropsychological examiner, Dr. Hill, did *not* attribute Claimant's limited fine motor dexterity to his hand tremors. Indeed, she noted that Claimant "did not demonstrate a notable tremor," (R. 452), but rather only "a *slight* tremor in the left hand when writing," (R. 454) (emphasis added). Accordingly, while Claimant may have limited fine motor dexterity, it does not stem from his tremors and the ALJ did not ignore any evidence suggesting his tremors were severe.[3]

---

[3] Neither Claimant nor Dr. Hill suggested what alternative impairment may have caused Claimant's limited fine motor dexterity. Because ALJs must only consider functional limitations that result from a claimant's medically determinable impairments, the ALJ's failure to mention this treatment note does not constitute an error. 20 CFR § 404.1529(d)(4); SSR 96-8, 1996 WL 374184 (June 2, 1996).

Third, even if the ALJ had erred by failing to designate one of the above impairments as severe, this error would not require reversal. The step two analysis is "merely a threshold requirement," meaning the evaluation proceeds so long as the ALJ finds at least one severe impairment. *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). Accordingly, "any error that an ALJ commits at step two is harmless as long as the ALJ goes on to consider the combined impact of a claimant's severe and non-severe impairments" in the RFC analysis. *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at n.1 (N.D.Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 648-49 (7th Cir. 2015)). Claimant's RFC arguments are addressed in Section III(C), *infra*.

**B.** **The ALJ's finding that Claimant's impairments do not meet or equal a listed impairment was supported by substantial evidence.**

At step three, the ALJ found that Claimant's impairments did not meet or medically equal listings 11.02 (seizure disorders), 11.18 (traumatic brain injury), 12.02 (neurocognitive disorders), 12.04 (depressive disorder), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorder), 12.11 (neurodevelopmental disorders), or 12.15 (trauma- and stressor-related disorders). (R. 727-31). Claimant argues that these findings constitute reversible error.[4] Again, the Court disagrees.

---

[4] Claimant argues in passing that even if he does not specifically meet the criteria for listings 12.02, 12.04, 12.05, 12.06, 12.11, and 12.15, "he demonstrates comparable mental health limitations throughout his medical records." (Dckt. #14 at 11). While a claimant may show "medical equivalence" if his impairment "is at least equal in severity and duration to the criteria of any listed impairment," 20 C.F.R. §404.1526(a), he "must present medical findings equal in severity to all the criteria for the one most similar listed impairment" in order to meet this test, *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Here, Claimant fails to cite any evidence in support of his equivalence claim. Absent such evidence, an ALJ "does not have to separately discuss equivalence." *Deloney v. Saul*, 840 Fed.Appx. 1, 3 (7th Cir. 2020) (citing Social Security Ruling (SSR) 17-2p, 82 Fed. Reg. 15,263, 15,265 (Mar. 27, 2017) (an ALJ need not articulate specific evidence supporting a finding that an impairment does not medically equal a listed impairment; a simple statement of non-equivalence will suffice)).

The listings describe impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of [his] age, education, or work experience." 20 C.F.R. §§404.1525(a), 416.925(a). They "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). To match a listed impairment, a claimant bears the burden of showing that his impairment meets "all of the specified medical criteria." *Id.* at 530. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

In his step three argument, Claimant cites only the number of each contested listing. He does not identify the impairments at issue, outline the listings' criteria, or explain how he meets each of those criteria with citations to the record. (Dckt. #14 at 10-11). Claimant's failure to make a properly supported argument on each of these points dooms his listing argument, for "[i]t is not this court's responsibility to research and construct the parties' arguments." *Carter v. Astrue*, 413 Fed.Appx. 899, 906 (7th Cir. 2011) ("conclusory analysis will be constructed as waiver"); *see also Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) (it is the claimant's burden to prove that his condition meets or equals a listed impairment). Even setting waiver to the side, the Court finds that the ALJ's step three analysis was supported by substantial evidence.

### 1. Claimant has not established that his impairment met listing 11.02 (seizure disorders).

Listing 11.02 requires either: (1) generalized tonic-clonic seizures[5] occurring at least once per month for three consecutive months despite adherence to prescribed treatment; (2) dyscognitive seizures occurring at least once per week for at least three consecutive months despite adherence to prescribed treatment; (3) generalized tonic-clonic seizures occurring at least

---

[5] Tonic-clonic seizures "involve both tonic (stiffening) and clonic (twitching or jerking) phases of muscle activity." Johns Hopkins, "Tonic-Clonic (Grand Mal) Seizures," https://www.hopkinsmedicine.org/ health /conditions-and-diseases/epilepsy/tonic-clonic-grand-mal-seizures, (Last visited Sept. 15, 2022).

once every two months for at least four consecutive months despite adherence to prescribed

treatment (with additional requirements not relevant here); or (4) dyscognitive seizures occurring

at least once every two weeks for at least three consecutive months despite adherence to

prescribed treatment (with additional requirements not relevant here).  In this case, the ALJ

addressed this listing as follows:

> [I]t is not evident in [Claimant's] medical record that he has had either seizure type
> persist at any frequency despite prescribed treatment.  Moreover, it is not
> objectively evident that he has had more than two seizures since March 2015 or any
> seizures since his alleged onset date.  Absent a document[ed] seizure pattern where
> seizures persist despite treatment, the undersigned finds that the claimant's
> condition does not meet listing 11.02.

(R. 20-21).

Claimant argues the ALJ found that he did not meet listing 11.02 solely because "his

history of seizure-like activity was not medically documented."  (Dckt. #14 at 10).   In response,

he cites three instances when he was "hospitalized for this condition" – on March 24, 2015,

November 19, 2015, and March 11, 2016.  (*Id.*).  The ALJ, however, did not suggest that

Claimant's "seizure-like" episodes were not medically documented, but that they were not

medically documented *within the disability period*.  She explicitly acknowledged the two 2015

hospitalizations, which occurred before Claimant's alleged onset date of February 28, 2016.  (R.

733).  As for the March 11, 2016 incident, Claimant was diagnosed with "fainting," and there

was no indication that he experienced seizure-like symptoms.  (R. 370).  Moreover, even if the

ALJ were to presume that all three of these incidents constituted tonic-clonic seizures (despite no

medical professional classifying them as such), Claimant does not argue that he suffered any

additional tonic-clonic seizures, much less tonic-clonic seizures at least once a month for three

consecutive months or once every two months for at least four consecutive months, as is required

under listing 11.02.  Finally, as the ALJ noted and Claimant does not contest, there is no

16

evidence that Claimant received any treatment for these seizures, another listing 11.02 requirement.

Claimant next asserts that because he experiences dyscognitive seizures[6] multiple times per week, the ALJ should have found that he met listing 11.02. (Dckt. #18 at 4). Again, Claimant fails to allege that he received any treatment for these episodes, as is required under listing 11.02. Claimant also admitted during his testimony at the hearing that these instances of fainting were not "actual seizure[s]." (R. 806). Accordingly, the ALJ's 11.02 listing finding was well-supported.

> **2. Claimant has not established that his mental impairments met listing 12.02 (neurocognitive disorders), 12.04 (depressive disorder), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorder), 12.11 (neurodevelopmental disorders), or 12.15 (trauma- and stressor-related disorders).**

Listings 12.02, 12.04, 12.06, 12.11, and 12.15 contain three paragraphs: A, B, and C. Paragraph A requires that the presence of a particular mental disorder be medically documented. Paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to perform any gainful activity. A claimant meets a listing if he can satisfy the diagnostic description in paragraph A, and the criteria of either paragraph B or paragraph C. Here, even assuming Claimant met the threshold paragraph A requirement for these listings, his step three argument fails because the ALJ's paragraph B and C findings against him were well-supported.

Under paragraph B, an affective disorder must result in at least one *extreme* or two *marked* limitations in four areas of mental functioning. Here, the ALJ found that Claimant's impairments caused a *moderate* limitation in three of the functional categories (understanding,

---

[6] Dyscognitive seizures are "characterized by alteration of consciousness without convulsions or loss of muscle control." Listing 11.02H1b.

remembering, or applying information; interacting with others; and concentrating, persisting, or

maintaining pace), as well as a *mild* limitation in managing himself. (R. 728-29). The ALJ cited

extensive evidence to support these findings, including Claimant's testimony, function reports,

and daily activities; normal psychiatric and mental status findings; treatment notes indicating

adequate memory; and Claimant's neuropsychological evaluation. (R. 728-29). In fact, relying

on the neuropsychological evaluation and Claimant's subjective complaints, the ALJ found

greater limitations than both the state agency psychological consultants and Claimant's treating

psychiatrist, Dr. Wier, all of whom opined that Claimant had no limitation in understanding or

memory. (R. 75-76, 675, 737). The ALJ acknowledged Dr. Kim's report indicating that

Claimant had marked limitations in various areas, (R. 619-21), but gave it little weight because it

was unsupported with citations, inconsistent with Dr. Kim's generally normal psychiatric

findings, and inconsistent with Claimant's reported activities. (R. 738-39).

Claimant does not acknowledge this lengthy analysis or offer any evidence contradicting

the ALJ's findings. He seems to suggest that his treating physicians' description of his mental

impairments as "severe" required a listings finding. (Dckt. #14 at 11). But this argument

ignores the fact that the ALJ also classified Claimant's ADHD, anxiety, depression, and specific

learning disorder as severe. (R. 726). Claimant also cites Dr. Kim's findings as evidence that he

met the paragraph B criteria, (Dckt. #14 at 11), but, as noted above, the ALJ addressed those

findings and she was entitled to reject them for the reasons she articulated, (R. 738). *See, e.g.,*

*Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (limitations articulated by the

treating physician need not be accepted if they are not supported by the record); *Skarbek v.*

*Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's

medical opinion . . . when the treating physician's opinion is internally inconsistent.") (citation

omitted); *Schreiber v. Colvin*, 519 Fed.Appx. 951, 958-59 (7th Cir. 2013) (affirming ALJ's decision not to give controlling weight to a treating physician's opinion where, among other things, claimant's own reported activities of daily living were inconsistent with the treating physician's assessment of claimant's limitations).

Claimant does not argue that he met the requirements of paragraph C, nor does he address the separate criteria for listing 12.05, which the ALJ discussed at length. By regurgitating evidence related to his mental impairments without addressing the reasoning articulated by the ALJ, Claimant essentially asks the Court to reweigh the evidence, which the Court will not do. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.").

### C.    The ALJ properly considered Claimant's subjective symptoms when formulating the RFC.

At step five, the ALJ concluded that a sufficient number of jobs existed in the national economy that Claimant could perform given his RFC, age, and education, including the representative positions of agricultural packer and sorter. (R. 740). Claimant now argues that he could not perform any of these jobs due to his seizure-like condition and his need to frequently use the bathroom. (Dckt. #14 at 13). Although Claimant frames this as a step five argument, the Court construes it as an argument that that the ALJ failed to properly consider Claimant's subjective symptoms when fashioning his RFC.

Once again, Claimant's argument fails to contradict or even acknowledge the ALJ's lengthy and detailed assessment of these very limitations. Accordingly, Claimant's subjective complaints argument is also waived. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.

1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

Even setting aside waiver, any challenge to the ALJ's symptoms evaluation faces a high hurdle. The Court will not overturn an ALJ's credibility finding unless it is "patently wrong," meaning it lacks any explanation or support in the record. *Elder*, 529 F.3d at 413-14. In this case, the Court finds that the ALJ did not err by discounting Claimant's allegations related to the severity and frequency of his fainting spells and bathroom use because the record either failed to substantiate or – worse yet – directly contradicted these claims. S*ee Manley v. Barnhart*, 154 Fed.Appx. 532, 536 (7th Cir. 2005) ("[T]he severity of . . . the claimant's subjective complaints need not be accepted insofar as they clash with other evidence in the record."); *see also Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (same).

Regarding Claimant's bathroom use, the ALJ found at step two that there was "no actual medical evidence documenting a digestive disorder resulting in excessive and frequent bathroom usage." (R. 727). Because Claimant's digestive disorder was not medically determinable, *see* 20 C.F.R. §404.1508 (a "medically determinable" impairment "must be established by objective medical evidence from an acceptable medical source"), the ALJ did not err by omitting the limitation from her RFC assessment, *see* SSR 96-8P ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms.").

As for Claimant's allegations of fainting, the ALJ found them to be inconsistent with normal neurological findings and physical examination findings – a conclusion that Claimant does not contest. (R. 735). The ALJ also noted that, although Claimant reported having seizures four times per week, fainting every other day, and falling twice per day, the medical record

"indicates that he has not had seizures or at least has not reported or sought treatment for seizure activity" since his February 2016 onset date. (R. 727, 733). While Claimant is correct that an ALJ may not discredit a Claimant's testimony solely based on a lack of objective evidence, *see Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009), "an ALJ may take the lack of medical evidence into account, as the ALJ did here," *Capman v. Colvin*, 617 Fed.Appx. 575, 580 (7th Cir. 2015). Furthermore, an ALJ may properly consider the fact that a claimant did not pursue treatment as evidence that his symptoms were not as severe as alleged. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (upholding finding based in part on "relatively conservative" treatment).

Finally, the Court notes that in spite of the dearth of objective evidence, the ALJ *did* credit Claimant's allegations regarding his seizures/fainting and accounted for them with corresponding limitations in the RFC. (R. 734). Claimant does not suggest what additional limitations would have better accommodated this impairment. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (it is a claimant's burden to identify "evidence-based restrictions that the ALJ could include in a revised RFC finding on remand").

Because the Court finds that the ALJ's analysis of Claimant's subjective symptoms was not "patently wrong," her decision not to incorporate additional limitations in the RFC will not be disturbed. *See Outlaw v. Astrue*, 412 Fed.Appx. 894, 898 (7th Cir. 2011) ("The ALJ needed only to include limitations in his RFC determination that . . . the ALJ found to be credible.").

## CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment (Dckt. #14) is denied. The decision of the ALJ is affirmed and judgment will be entered in favor of the Commissioner.

**ENTERED:   September 19, 2022**

**Jeffrey I. Cummings**
**United States Magistrate Judge**